STATE OF MISSOURI, EX REL. DOROTHEA WOLFF, Appellant, v. CHARLES F. VOGEL, Respondent.

February 18, 1879.

1. An appeal does not operate a *supersedeas* unless the statutory prerequisites thereto are strictly complied with.

2. An appeal-bond was given in the Circuit Court, conditioned to perform such judgment "as the Supreme Court may give, or such as the Supreme Court may compel the Court of Appeals or Circuit Court to give." The Court of Appeals affirmed the judgment, from which affirmance an appeal was made to the Supreme Court without other bond. *Held*, that such appeal did not operate a *supersedeas*.

3. *Mandamus* will lie to compel a circuit clerk to issue execution where he has wrongfully refused to do so.

4. The statute concerning appeals and *supersedeas* applies to appeals to the Supreme Court from the Court of Appeals, by virtue of the Constitution.

APPLICATION for *mandamus*.
*Peremptory mandamus issued.*
KEHR & TITTMAN, for relator.
LOUIS GOTTSCHALK & R. E. ROMBAUER, for respondent.

LEWIS, P. J., delivered the opinion of the court.

This is an original application to this court for a *mandamus*. The petition states that on March 5, 1877, the relator obtained in the St. Louis Circuit Court a judgment against Henry B. Berning for the penal sum of $60,000, with an order of execution for the sum of $2,329.22, part thereof, with costs, etc.; that thereupon said Berning took an appeal to the St. Louis Court of Appeals, giving a bond which was duly approved by the Circuit Court, and which is copied at length into the petition; that on May 28, 1878, the Court of Appeals affirmed the judgment of the Circuit Court, and, on June 14th following, issued its mandate accordingly, which was duly filed in said Circuit Court; that on June 4, 1878, said Berning took an appeal from the Court of Appeals to the Supreme Court, upon his application and affidavit only, without giving or tendering any

appeal-bond whatever; that on January 8, 1879, the relator demanded of the defendant in this proceeding, who was and still is the clerk of the St. Louis Circuit Court, that he issue an execution for the enforcing of the judgment of said Circuit Court above mentioned, but that the defendant refused so to do; that the relator thereupon applied to said Circuit Court for an order directing the clerk to issue an execution on said judgment, which order was refused. The petition prays for a *mandamus* to compel the defendant to issue the execution as demanded.

The defendant's return upon the alternative writ admits the facts stated in the petition, and alleges that, prior to the taking of the appeal to the Supreme Court, said Berning caused a notice to be served on the relator, to the effect that he would apply to the Court of Appeals for an appeal to the Supreme Court, to be granted upon his affidavit, and upon the same bond which had been approved by the Circuit Court, and which in its terms provided for an appeal to the Supreme Court. Hereupon the relator moves for a peremptory writ upon the face of the return.

The statutory provision for a stay of execution upon appeal granted is as follows: " Upon the appeal being made, the Circuit Court shall make an order allowing the appeal, and such allowance thereof shall stay the execution in the following cases, and no other: * * * Second, when the appellant, or some responsible person for him, together with two sufficient securities to be approved by the court, shall during the term at which the judgment appealed from was rendered enter into a recognizance to the adverse party, * * * conditioned that the appellant will prosecute his appeal with due diligence to a decision in the Supreme Court, and shall perform such judgment as shall be given by the Supreme Court, or such as the Supreme Court may direct the Circuit Court to give; and if the judgment of such court, or any part thereof, be affirmed, that he will comply with and perform the same so far as it may be affirmed, and will

pay all damages and costs which may be awarded against the appellant by the Supreme Court." By art. 6, sect. 15, of the Constitution.it is provided that all laws relating to the practice in the Supreme Court shall apply to this court so far as the same may be applicable. It results that the statutory bond for an appeal to this court must be in the form above transcribed, except that the St. Louis Court of Appeals, will be substituted for the Supreme Court wherever this is mentioned. The bond which was given in the .Circuit Court in the present case properly contained these substitutions; but contained also a stipulation binding .the appellant to perform such judgment "as the Supreme Court may give, or such as the Supreme Court may compel the Court of Appeals or Circuit Court to give." This additional stipulation is supposed by the defendant to operate a stay of .execution pending .the appeal from this court to the Supreme Court. He does not show us, however, any statutory provision authorizing the interpolation, or attaching to it the effect claimed. .

Under the common law, the writ of error or *certiorari* operated by its own inherent force to stay execution of the judgment. Our statute abolishes. this rule, and provides that no such effect shall follow an appeal or writ of error unless certain conditions shall have been first fulfilled. If, then, with reference to the pending appeal from this court to the Supreme Court, the bond under consideration fulfils the statutory conditions, the defendant was right in refusing to issue execution upon the relator's demand. But if those conditions are not fulfilled, a peremptory *mandamus* must be awarded as prayed for in this proceeding.

. The defendant argues that although the cumulative conditions set forth in the bond may have no express warrant in the statute, yet the instrument is good as a common-law obligation, and is as binding on the obligors as if framed under statutory direction. But this is begging the question. The present inquiry has no concern with what the

obligors are bound to do or not to do. The stay of execution does not arise upon the face of the bond. Whether regarded as a common-law obligation or otherwise, nothing can be found in its terms capable of producing such an effect. The stay is in fact a collateral incident annexed by statutory command to a fulfilment of the statutory condition. It is, therefore, not of the least consequence what may or may not be the extent of liability created by the bond as against the obligors. If it responds to the statutory requirement, it will stay the execution. If it does not so respond, then, however efficacious it may be for other purposes, it will not stay the execution.

Neither the Constitution nor any statute has provided in direct terms for a stay of execution pending appeal from this court to the Supreme Court. But the steps whereby the Supreme Court acquires jurisdiction of a cause may be held to belong to the practice in that court, in like manner as the issue and service of summons pertains to the system of practice in the Circuit Court. It is therefore considered that, under the constitutional provision which makes all laws relating to practice in the Supreme Court applicable to the Court of Appeals, the statute above quoted applies as well to appeals from this court as to those taken from the Circuit Court. Such, at least, has been the construction uniformly acted upon in this court and in the Supreme Court since the organization of the Court of Appeals. We must therefore recur to the statute in order to ascertain how far, if at all, the bond under consideration fulfils the conditions requisite to a stay of execution pending the present appeal.

The appeal in this instance is from the judgment of the St. Louis Court of Appeals, rendered in the March term, 1878. The statutory condition requires that the recognizance be entered into " during the term at which the judgment appealed from was rendered." The bond or recognizance in this case was not entered into during the March term, 1878, of this court, and therefore fails of the stat-

utory condition in that particular. Another statutory condition requires that the bond be approved by the court from whose judgment the appeal is taken. The bond under consideration has never been approved by this court, nor even offered for its approval. Thus there has literally been no attempt, in either of these particulars, at a compliance with the terms upon which, only, a stay of execution is permitted by law.

It may be objected that this is too literal an interpretation of the statute. But we are not aware of any authority to depart from literal interpretation, when this involves no repugnancy or inconsistency with other provisions of law, or with common sense, or with the manifest purposes of the statute itself. The provisions before us are plain, consistent, and intelligible. There need be no mistake as to the manner of obeying them. We may consider them practically useless. But the Constitution has not intrusted us with authority to revise the legislative wisdom in this instance, more than in any other. If the law as it stands imposes any unnecessary burden, the Legislature and not the courts must apply the remedy.

There is no need for us to sustain the law in its necessary interpretation upon any ground of utility or convenience. It is enough for all judicial purposes that we find it upon the statute-book, and that its meaning is clear and unequivocal. It might be easy, nevertheless, to assign many reasons in support of its manifest propriety. The sureties on an appeal-bond may be satisfactory to the Circuit Court, and yet not so to the Court of Appeals, for the delay and prolonged litigation involved in an appeal to the Supreme Court. They may, since they were accepted by the Circuit Court, have become insolvent. For this evil, it is true, there may be another remedy. But this furnishes no argument against the manifest propriety of securing to the court whose judgment is appealed from an opportunity to pass upon the guaranty by which the force of that judgment is to be suspended.

A law framed to meet the construction contended for by the defendant would be anomalous. It would propose to anticipate the judgment of the Court of Appeals as a foregone conclusion, even before the filing of the transcript. It would enable the Circuit Court, by an approval of the bond tendered, to create a *supersedeas* in advance of the judgment of a superior court. It would assume the appellant's refusal, under any circumstances, to acquiesce in the judgment of the Court of Appeals if adverse to his claim. He may, nevertheless, fail to perfect his appeal to the Supreme Court; yet the circuit clerk, perceiving by his own records that the judgment of affirmance in the Court of Appeals, if rendered, is already superseded, may still decline for an indefinite period to issue execution. If the clerk at last becomes satisfied that no appeal has been taken from the Court of Appeals, and thereupon issues execution, it will then be the clerk, and not the court, who performs the judicial function of discharging the *supersedeas*.

A peremptory *mandamus* will issue, as prayed for by the relator. All the judges concur.